Good morning, Your Honors. Today, Your Honor, is the intercession. For those of you who are here, it is late in the morning, so the interest of the hearing is really to welcome you to our office of legal assistance. The subject issue of this case is an issue that the case really hinges on. It's what's going on in CUNY today. But first, we have this persecution. It's important for you to understand that we've got a specific process to the level of persecution. It's not the first part of the intercession. And the answer before the intercession, whether or not that intercession is also an intercession, whether or not it's an intercession for our distinguished credibility, for our deepest motivations, to seek more and more human credibility, to be a true subject of human credibility. We have to acknowledge that in this case, it was talked about a lot in social justice. I sense this is an issue that is so important to you. The stress of persecution and extension of the intercession, there are extensive discussions on there on this table. Your Honor, whether the court is looking at specific credibility findings and credibility statistics, of course, it seems to me, it's really important to see that there can be a true sign, a true call for human credibility. Yes, Your Honor. I think that the board signed an option, which I don't think all judges have. Please speak to that in a moment. Yes, Your Honor. I will. So in this case, the house of execution is clear. I was wrong. Pardon me, Your Honor. I was wrong about the fact that, as a cumulative matter, Mr. E. C. Sumner, the house of execution, what was so special? He was arrested and restrained by two police officers, while other police officers were usually arrested. It's kind of funny. So, what do you mean by that? Well, Your Honor, in the human aspect, I'm sorry, but also in the human aspect, he has fled crimes, and he's been arrested and is currently being probationed. I screwed up, too. Your Honor, I'm not at all bothered to discuss the instance of the shooting. It wasn't my fault. But is it really about me? Seriously? Your Honor, this is a separate problem with the board's decision. It's that they viewed each of these issues in isolation. He was beaten by his tribunal supporters and put to peace on occasion, and he received some of the objectives that he received during his contention, under threat of additional beating, and detention by the police. His father seems to have never heard any of this. Your Honor, there's a little bit of history. That's correct. Your Honor, there's a lot of history. It's pretty clear that the threat of medical treatment is obsolete, and that people have to either record and see what their content is, in order to be able to turn this around without having to either receive any medical treatment or also get additionally deterred from telling their patients how that would have helped, or is it just a different point? What's the point? Well, it's very similar to Coole. But in fact, with respect to that, there were multiple, and that's G.E.U. G.E.U. in respect that he was turned into a very serious abuse. He was, and even though he did it, there was no mental alteration, and it was not a very serious injury. But this court found that the detentions, the beatings, being punished in advance were sufficient to show a legitimate act of resistance. There was prosecution requiring reversal. In this case, it was a yes-sir with a yes-yes. And it was pretty strong, though. The G.E.U. and the U.S. Court of Appeals changed it to a three-six, and a four-six, and a three-six, and a four-six. Now, as far as the trial court in theory are concerned, the court finds that there's more persuasion than it should, that the U.S. Court of Appeals changed the presumption on a security burden to rebut that presumption. Now, the court did not find that persuaders rebutted the presumption. I thought that now they don't even have to do so. This would be an obvious situation. Of course, you know, politicians and the security units don't empower, in every instance, that Mr. D.J. retires. He received more persecution. It was a fundamental change in circumstances that he rebutted the presumption. I thought I'll stop it here. Here is the court's response to that. This cumulative analysis is not required. The response we have, responding in the name of the court finds it reasonable to re-end this program because the agency is still on the outskirts. It's not considerate. These events in the area, but look at each, and basically, these are different. And the opposite of that is true. Moreover, I don't really see it now. Because the court repeatedly says it considers each one of these incidents, for example, the law that states that D.J. Gonzales was not a single decision-maker. I think the court's approach to that law  However, he talks about just certain number of sources, and then he goes, the court has long since described each of the other incidents in a different way. Obviously, these are different facts, but such is thought. I'm not going to go into that. And in each instance, there are parties who are here right now that will not be called I'm just going to say, the group that we're going to talk about today, so I'm not sure if there are any other names, but there are a lot of parties that are here right now that are going to be called. And if you see that, I'm not going to ask who it is, or what party it is, but I'm just going to say it's a group of parties here. And I'm going to call on Katie Walters, our sponsor, to come up here and speak to us. So, Katie's going to talk to us about the agency's position. She's going to say that the parties that are still involved in the case are not going to be called as a group. So, she's going to start off with the parties that are here. So, the parties that are still out there. So, the parties that are still involved in the case, for one, they need to be included in the case repertoire. And as a result, they are being pulled out of the case by requiring an annual treatment. They need to be paid and charged with crimes. As a matter of fact, every government department here complies on self-fulfillment and support and financial support and how they're going to be treated. So, those definitions, those three sections, those are all going to be considered. Next, I have a short part of the agenda. So, Katie, I just want to say that the agency is also currently in the process of setting up a system where all the reporters also report with the police in charge or add to the other reporters and the police to be involved. However, they're not going to have an independent debate on whether or not they are going to do it. Both sides are not going to be in a situation where they are clear. So, to answer that question, it's just that as soon as the agency is going to have a kind of a useful, powerful, political figure in all of the criminal justice structures instead of somebody in one place or in another office, that is clearly insufficiently person-centered in respect to whether they're better off or not. It seems to me that it's also the case that police are going to come in here where there's kind of a minimum of supporters which means that they need to be a powerful, political figure in the window of the agency. It seems to show where our insufficiently person-centered amount of supporters is part of the solution to the problem. And that they cannot act without   So, I think that that's one of the issues that the police are going    I think that that's one of the issues that the police are going to have to deal with. I think that that's one of the issues that the police are going to have to deal      a real issue for all of us. I think that that's a real issue for all of us. And I think that that's really the answer to the real issue we are facing right   didn't want to talk about it too much, but I want to take a few minutes of your time and kind of give you a little bit of insight into what these laws really are and what's on the back of these issues. I can't emphasize that you're able to speak directly to the people you're talking to. I can't emphasize that
judges: Noonan, W. Fletcher, Murguia